JANE B. TABER v. NELLIE B. SHATTUCK AND LEMUEL PEAK.

*Deed—Description—Dishonest procurement of quitclaim.*

1. A description in a deed, if otherwise good, is not vitiated by the omission of the word "rods" to avoid tautology, where the meaning is plain.

2. The owner of several parcels of land, in transferring one described another by mistake. The land transferred was repeatedly deeded, but the wrong description was always used. It was also mortgaged

in the same terms and sold on foreclosure to the mortgagee. The mortgager, however, then gave a stranger a deed describing the land as it was, and the grantee again conveyed it by the same description, but these deeds were not recorded. The last of these grantees mortgaged the land by the right description, and the mortgage was foreclosed by advertisement. A quitclaim of the land to which the original description really applied was then procured from the original grantor, without consideration, and in the interest of the later foreclosure purchaser. This quitclaim was given in the understanding that it did not interfere with any title previously conveyed. *Held* (1) that procuring the quitclaim deed under such circumstances was a fraud on the first mortgagee, who was entitled to the benefit of it (2) such mortgagee could maintain a bill for a correction of the original deed and a release of adverse title; and as in foreclosing she impleaded all persons who were entitled to be parties, and her notice lis pendens referred to the mortgage by its record, the description was identified with the paper title ; (3) the stranger, having notice of complainant's title and no interest in the lands, need not be made a party defendant.

3. Costs below were allowed a losing defendant to a bill in equity that was amended before the final hearing, while the testimony was taken under the issue as first submitted.

Appeal from Kent. (Montgomery, J.) Oct. 23–4.—Nov. 19.

BILL to clear title. Defendants appeal. Affirmed.

*J. W. Ransom* for complainant, cited as to the obligation of a grantor to hold such title as he acquires in trust for the benefit of the grantee : Sugd. Vendors ch. 16, §§ 5, 10 ; ch. 17, §§ 1, 2 ; if a mortgagee with notice of a trust gets a conveyance from the trustee in order to protect his mortgage, he would not be allowed to derive any benefit from it, but he would be held to be subject to the original trust in the same manner as the trustee : 1 Story's Eq. Jur. § 395 ; equity will hold the purchaser a trustee for the benefit of the person whose rights he has thus sought to defraud or defeat : *Murray v. Ballou* 1 Johns. Ch. 566 ; *Murray v. Finster* 2 Johns. Ch. 158.

*Maher & Felker* for defendants. A holder of a subsequent equity, for value, and without notice, may, even after notice of an earlier equity in favor of a third person, secure the advantage given by a conveyance of the legal estate, and thus establish his own priority : 1 Story's Eq. Jur. § 64c. ; *Goleborn v. Alcock* 2 Sim. 552 ; *Jerrard v. Saunders* 2 Ves.

Jr. 454; *Jones v. Powles* 3 Myl. & K. 581; *Cottrell v. Hughes* 15 C. B. 532; 2 Sugden on Vendors (8th Am. ed.) 499; *Fitzsimmons v. Ogden* 7 Cr. 2, 18; *Judson v. Corcoran* 17 How. 614; *Basset v. Nosworthy* 2 Lead. Cas. Eq. (4th Am. ed.) pt. 1, p. 1; Adam's Equity, 161, 162; the decisions and dicta which conflict with this conclusion, will be found, upon examination, to be dealing with the alleged rights of bona fide purchasers for value, and not with a mere question of priorities : 2 Pomeroy's Eq. Jur. § 729 ; if the legal estate is outstanding in a third person having no privity with the others, then the person who gets in the legal estate would get the priority; but when the person having the legal estate holds in the character of a trustee for them all, he cannot prefer either, or create a priority by giving the legal estate to any one in particular : *Sharples v. Adams* 32 Beav. 213; notice of the rights of one person does not extend to protect the latent equities of others : *Bloomer v. Henderson* 8 Mich. 375 ; *Peter v. Hall* 1 Fed. Rep. 755 ; *Losey v. Simpson* 11 N. J. Eq. 240 ; 1 Jones on Mort. §§ 441, 443 ; *Cicotte v. Gagnier* 2 Mich. 381, 389 ; a bona fide purchaser from one having an apparent right to sell is not to be affected by the latent equities of third persons of which he had no notice : *Acer v. Westcott* 40 N. Y. 390, 391 ; *Flanagan v. Oberthier* 50 Tex. 379; *Flagg v. Mann* 2 Sumn. 502 ; an equitable mortgage for a precedent debt will have no priority over the lien of a subsequent judgment ; between two such contestants the first perfected legal title will prevail: *Wheeler v. Kirtland* 24 N. J. Eq. 552 ; *Dwight v. Newell* 3 N. Y. 185 ; *Wentz's Appeal* 7 Penn. St. 151 ; *Pratt v. Clemens* 4 W. Va. 443 ; 1 Jones Mort. § 470.

CAMPBELL, J. The bill in this case was filed to remove a cloud upon complainant's title arising out of the supposed confusion or change of one of the lines from which distances were reckoned in ascertaining the location of her land. From the testimony it appeared that the difficulty arose from another source, and the bill was amended so as to meet the real facts, and obtain a correction of the deed to complainant, as well as a release from defendant. Such a decree was given below ; and defendants appeal.

The controversy arose in this wise : ·

In May, 1866, defendant Peak owned a parcel of land lying on the south side of section 36, in town 9 north of

range 11 west, in Kent county, extending from the west bank of Rogue river to the southwest corner of the east half of the southwest quarter, 13 chains and 59 links in depth northward, and 15 chains 25 links wide on the south, and 13 chains 50 links wide on the north side upon an east and west road. There was also a north and south road along the river.

In August, 1869, Peak sold to Mrs. Harriet M. Bates a parcel eight rods wide and ten rods deep north and south, lying one hundred rods east of the southwest corner of section 36, and twenty rods east of the quarter section corner beforementioned, or thereabouts. This, if the distances are correct, would leave Mrs. Bates' line about thirty-nine rods west of the river on the southerly side.

On May 19, 1871, Peak sold to Lafayette McConnell a parcel of land four rods and five feet wide by ten rods north and south, which was intended to be described as joining Mrs. Bates and just east of her, but which was, in fact, so described as to cover a parcel lying between four and five rods east of it. McConnell, however, was put in possession of the lot adjoining Mrs. Bates, and the mistake in the description was not discovered.

It does not appear distinctly how the mistake arose, but it appears that there is a jog in the surveys, so that the west line of the town just south is about ten rods east of the west line of the town where the land in question lies, and it is probable that the corners were thus confounded. McConnell paid in full for the lot, and improved it by building a dwelling which he occupied with his family.

In November, 1875, McConnell sold, by the same erroneous description, to George M. Wheelock. Wheelock sold to Theodore I. Phelps, January 3, 1876, and Phelps, on January 31, 1876, conveyed to Marcia E. Travis, the name being in the deed called Maria E. Travis. It is suggested that in this description, which otherwise is, as is the description in all the preceding deeds, identical with that in the grant to McConnell, the word "rods" is left out in describing the starting point, which is thus rendered indefinite. A careful examination, however, will show that the deed itself supplies

the supposed defect, which is only apparent. If found anywhere but in a deed the omission would be readily understood as meant to avoid tautology. The practice of conveyancers is to be more specific, but a description cannot be made bad by any such defect, if otherwise good. It was subject, however, to the same objection as the former deeds,—that it located the land too far east. The property, however, was given into the grantee's possession as occupied by McConnell, and her tenant was placed upon it.

On the 15th day of December, 1876, Mrs. Travis gave a mortgage on the property to complainant. This mortgage was afterwards foreclosed in equity and the property bid in, and complainant was put in possession by the sheriff on a writ of assistance.

After this mortgage, on May 19, 1877, Mrs. Travis conveyed to Henry K. Crissman the lot in controversy, by a correct description. At this time she had no title except that derived from Phelps. Crissman did not record his deed, which was first produced during this controversy.

March 18, 1878, Crissman conveyed to Anna Conant by a correct description, but her deed was not on record when complainant filed her foreclosure bill. Anna Conant mortgaged to defendant, who foreclosed her mortgage by advertisement, and became vested with the title by deed from the purchaser, who was her agent. During all this time Peak had never conveyed to any one by true description, and there was nothing of record to connect Mrs. Conant with either Peak or Mrs. Travis.

Complainant made Crissman and wife, Phidelia Conant and Peter W. Crissman, defendants, as well as Mrs. Travis and her husband; mentioning them in the usual way applicable to claimants of subsequent interests. None of them appeared or set up any rights.

In June, 1879, Alonzo R. Shattuck, husband of defendant Nellie B. Shattuck, procured an agent to apply to Peak for a quitclaim deed of the premises. Peak informed the agent that he had sold the land to McConnell. On learning that there was something wrong about the description, and being

assured it would harm no one, Peak made a quitclaim conveyance, without any consideration, to Mr. Shattuck, who afterwards conveyed to his wife. An action of ejectment in her interest brought the fact of a mistake in the description to notice, and led to this litigation.

Although there is a good deal of testimony in this record, there is nothing which in any way impairs the right of complainant to the relief given her. It appears fully that she has obtained a proper sale and title of the land in question by the description under which it was sold and occupied. It also appears that defendant Nellie Shattuck never got any title by any better description or from any superior source until defendant Peak conveyed to her husband under the supposition that he was doing nothing to interfere with the title he had meant to grant, of which Shattuck's agent was fully informed. Obtaining the deed under such circumstances was such a fraud on complainant as entitles her to have the deed enure to her benefit.

In foreclosing her mortgage complainant made all persons parties who are shown by the testimony to have been then entitled to be brought in, and her notice of lis pendens referred to the mortgage by its record, so that even if the description of the lands did not contain (as we think it did), enough to identify it with the paper title, this reference identified it. And as it is entirely clear that when Peak conveyed to Shattuck every one understood what the difficulty with the title was, and as Crissman, under whom Mrs. Shattuck claims, never had any title that did not come from the chain made under the old description, the whole defense is illusory. Whoever devised the procurement of Peak's· quitclaim did so for a purpose which no court can sanction.

We can see no reason why Crissman should be made a party here. He was a party to the foreclosure suit, and bound by that, and knew what complainant's title was. He has now no interest in the land, and under such circumstances the possibility of liability under a covenant of warranty is not such as to require him to be brought in.

We think the decree below was warranted by the facts, and

should be affirmed. But we agree with defendant's counsel that inasmuch as the bill, as originally filed, was not the one relied on at the final hearing, and as the testimony was substantially taken under the early issue, the defendant Mrs. Shattuck should have recovered costs below. The affirmance therefore will be with costs of this Court to complainant, and costs of the court below to defendant Shattuck, which may be set off against each other on the taxation, leaving the proper party to recover the balance.

The other Justices concurred.