### BANKS v. ALLEN.

DEEDS—DESCRIPTION—MISTAKE—REFORMATION—QUIETING TITLE—
LACHES—VENDOR AND PURCHASER—CONSTRUCTIVE NOTICE.

By mistake a conveyance of 20 acres of land described the premises as half of a 40-acre subdivision, without specifying which half. The grantee, however, was put in possession of the south half, which the grantor owned, the north half belonging to others. The same omission occurred in a mortgage afterwards given by the grantee to complainant. The mortgage was foreclosed by advertisement, complainant becoming the purchaser. Fifteen years after the execution of the mortgage, complainant filed a bill to reform the several conveyances and to quiet his title. *Held*, that he was entitled to the relief prayed as against those claiming under a subsequent conveyance from the original grantor, who took while complainant was in possession, and were therefore chargeable with notice of his rights.

Appeal from Oceana; Russell, J. Submitted April 19, 1901. Decided June 4, 1901.

Bill by Henry Clay Banks against Dan Allen, Mary E. Osmun, and Herman Boyd to reform certain conveyances

and to quiet title.    From a decree dismissing the bill, complainant appeals.    Reversed.

*George S. Lovelace* (*N. J. Brown,* of counsel), for complainant.

*Hartwick & Foote* (*C. W. Sessions,* of counsel), for defendants

LONG, J.    Bill to reform a deed and quiet title to certain lands in Oceana county.    The complainant resides at Elgin, Ill., and claims to own the lands in controversy here in fee.    The bill sets out that he is the owner of the N. E. ¼ of the S. W. ¼, and the S. ½ of the S. E. ¼ of the N. W. ¼, of section 35, town 13 N., range 18 W., and other lands, in Oceana county, this State; that the N. ½ of the S. E. ¼ of the N. W. ¼ of said section became the property of one Christopher Rager in 1873, and has since been owned and occupied by him and his heirs; that in 1875 the S. ½ of the S. E. ¼ of the N. W. ¼ became the property of one Amos H. Armitage and others, and prior to the year 1884 became the sole property of said Armitage and his wife; that, in the year 1884, Armitage and wife conveyed all the property above described to one Hachnel, but in said deed of conveyance the word " south " was omitted, so the description read, "half of the southeast quarter of said northwest quarter;" that Hachnel was put into possession of the S. ½ of the S. E. ¼ of the N. W. ¼ under said deed, and so remained in possession until the 10th day of November, 1895; that on the 18th day of March, 1884, Hachnel and wife executed a mortgage to Armitage and wife, covering the lands, but in the mortgage the word "south" was again omitted from the description; that in December, 1884, the mortgage was assigned by Armitage and wife to William Banks, and by him assigned to Henry Clay Banks, the complainant here; that this mortgage was afterwards foreclosed by advertisement, and in the description the word "south" was

again omitted; that on the 14th day of October, 1895, the complainant obtained judgment against Hachnel in the circuit court for restitution of the premises, including the S. ½ of the S. E. ¼ of the N. W. ¼ of said section 35; that on said trial Hanson & Hanson and Brown & Lovelace were his attorneys, acting for and in his behalf, but that Brown & Lovelace had the control of his case, and that Hartwick & Foote acted as attorneys for the defendant, Hachnel; that, upon the trial of said cause, he, as plaintiff, introduced testimony identifying the lands owned by Hachnel, and occupied by him, and intended to be covered by said mortgage, among which was the S. ½ of the S. E. ¼ of the N. W. ¼ of section 35, together with other lands; that, after the rendition of the judgment, he paid his said attorneys in full for all services, and discharged them from any further participation in said cause, and that they thereafter had no authority to act further therein; but that on March 5, 1898, said Hanson & Hanson, by John D. S. Hanson, a member of said firm, pretending to act as his attorneys, entered into a stipulation with the attorneys of Hachnel to change the record of said judgment, by which there was excepted from said judgment, by an interlineation therein, the S. ½ of the S. E. ¼ of N. W. ¼ of said section 35; that this was done without the knowledge, consent, or authority of complainant; that on October 22, 1895, Hartwick, the attorney as aforesaid of said Hachnel, obtained from Armitage and wife, and also from Hachnel and wife, quitclaim deeds of the S. ½ of S. E. ¼ of N. W. ¼ of said section 35, with full knowledge of the rights of complainant in said premises; that thereafter said Hartwick conveyed said premises so deeded to him by Armitage and wife and Hachnel and wife to the defendant Mary E. Osmun, who conveyed the same to defendant Herman Boyd; that these defendants now claim to own or to have some interest in said premises; that on April 27, 1898, the defendant Dan Allen, acting under some supposed authority or claim by reason of the change in said judgment entry, or by some paper lease from Herman Boyd, attempted to

enter upon said lands, and now threatens to enter thereon, and forcibly deprive 'the complainant of his possession. The prayer of the bill is that the description in the deed from Armitage and wife to Hachnel may be reformed and corrected, together with the description in the mortgage and sheriff's deed, and that the several conveyances obtained by Hartwick from Armitage and Hachnel may be decreed to have inured to the benefit of complainant. The record contains an affidavit made by John D. S. Hanson, which is made a part of the bill, in which he says that he signed the stipulation, above referred to, to correct the judgment, under a misapprehension of the facts.

The defendants Allen and Boyd answered the bill. In their answer they allege that the judgment of restitution referred to stands as the judgment of the court; that, at the time the stipulation was signed by Hanson, he stated to Hartwick that he had not received his pay from complainant; that Mary E. Osmun conveyed the premises by warranty deed to defendant Boyd in 1898, and that deed was duly recorded prior to the date of the filing of complainant's bill; and the defendants claim the same benefit and advantage by their answer as if they had pleaded or demurred to the bill. It is not alleged in the answer that they paid anything for the lands; and they do not deny in the answer that Hartwick knew of the claim of complainant at the time he took his deeds from Armitage and Hachnel. Defendant Osmun filed a disclaimer.

The complainant introduced testimony showing that the original order of the court was that complainant here was entitled to the restitution of the premises in controversy, but that, by reason of the stipulation, the entry was made excepting the land in controversy. A copy of the journal entry, as corrected under the stipulation, appears in the record. The last journal entry reads:

"In the above-named cause it is hereby stipulated by and between the parties  *  *  *  that the journal entry of the finding of the court in the above-entitled cause does not correctly record the finding of the court as made by

the court, and, for the purpose of correcting said journal entry, it is hereby stipulated and agreed between the parties hereto that the said journal entry be changed so as to read as follows."

Then follows the further order excepting the S. ½ of the S. E. ¼ of the N. W. ¼ of section 35. The first order made was put in evidence, showing that the described property was included in that order.

The testimony was taken in open court, and the complainant called as a witness in his behalf Mr. N. J. Brown, an attorney, who acted as attorney for him in the suit for possession of the lands. He testified that during the trial the complaint was corrected so as to read the S. ½; that the amendment was made to correspond to the proofs of identification of the land as the S. ½; and that the journal entry was made originally including those lands. The wife of William Banks testified that, after the summary proceedings, a deputy sheriff put herself and husband into possession of the whole land, including the land in controversy, and that they remained there as agents of the complainant up to the time of her husband's death, since which she has been in possession as such agent. Testimony was also given by complainant tending to show that the land in controversy is of the value of about $700.

Mr. Hartwick was called as a witness for the defendants, and testified, substantially, that, after the determination of the summary proceeding, he took a deed from Armitage and wife and one from Hachnel and wife; that he had a talk with William Banks in relation to procuring a title to this land; that he subsequently took the deeds; that William Banks agreed to pay him his fees in the summary proceeding as attorney for Mr. Hachnel; that after getting the deeds he wrote Banks, saying:

"In regard to the 20 acres which we have during the past two years been negotiating about, I have found a party who will give me $50, and take a quitclaim deed of the same. I do not wish to complicate you in perfecting

your title to the land, but must have my pay according to agreement. You were to pay me my fees, which were $25, and release of claim for costs of the suit for possession of land. If you will send me within 10 days $26.50, and a receipt in full for said costs, I will execute and deliver to you a deed for said 20 acres. If you do not do this, I shall accept the $50 from the party referred to."

. Witness testified that, some time after writing this letter, William Banks asked him to extend the time of payment, which he did, but that Banks never paid the costs as agreed, and that thereafter he discovered the mistake in the journal entry, and had it corrected; that he took the deeds in order to secure his pay as attorney for Hachnel in the summary proceeding; that he thereafter sold the land to Mrs. Osmun, but that the negotiations for the sale were with her husband.

Defendant Boyd was not called as a witness, and there is no claim made by the answer, and no testimony showing, that he ever paid a dollar for the land. Mr. Osmun, the husband of defendant Mary E. Osmun, testified that, at the time of the foreclosure of the mortgage, he was the attorney for complainant, Banks, in the proceeding; that he did not discover the mistake in the description at that time, but that he was furnished with an abstract when he purchased the land for his wife. Defendant Allen claims to be tenant under Boyd.

The court below dismissed complainant's bill, and complainant has appealed.

It is the claim of defendants that complainant has been guilty of such laches as to preclude his recovery; that he knew of the mistake in the description more than 15 years ago, and has slept upon his rights all that time; that the mortgage contained no power to sell the 20 acres of land in dispute, and that as to that parcel the description in the mortgage was worthless and void; that the power of sale in the mortgage could not be reformed after it had been exhausted by sale of the premises and payment of the mortgage debt. It is further claimed that, so far as this parcel is concerned, the mortgage and sheriff's deed are void, because of the uncertainty in the description.

This contention cannot be sustained. The court below was in error in dismissing complainant's bill. The record shows conclusively · that, in the year 1881, Amos H. Armitage became the owner of the S. ½ of the S. E. ¼ of the N. W. ¼ of section 35, the land in controversy here. He never owned the N. ½ of that description, the title to which vested in one Rager in 1873, and, so far as the record shows, still remains in Rager. It is also conclusively shown that Armitage did own this S. ½ at the time he conveyed to Hachnel. It is evident from the whole record that there was a mutual mistake in describing the land in the deed from Armitage and wife to Hachnel, and also a mutual mistake in the description in the mortgage from Hachnel and wife to Armitage. The complainant claims title through the foreclosure of this mortgage. All the parties except defendant Boyd seem to have had more or less to do with the proceedings, either in the foreclosure of the mortgage or in the summary proceeding, where it was discovered that a mistake had been made in omitting the word "south" in the description. In the face of this, Hartwick procured quitclaim deeds from Armitage and Hachnel, and deeded to Mrs. Osmun, her husband making the arrangement for the purchase, he having acted as attorney for the complainant in the foreclosure of the mortgage. Mrs. Osmun disclaims any interest in the premises, and Boyd makes no claim that he ever paid a dollar for the land. He asserts in his answer, however, that, having taken a warranty deed from Mrs. Osmun, and recorded the same, he is entitled to the premises against the complainant.

The case falls so squarely within the rule laid down in Taber v. Shattuck, 55 Mich. 370 (21 N. W. 371), that the citation of other authorities is quite unnecessary. In that case it appeared that there was a mistake in the description of the land conveyed, and the land was mortgaged by the wrong description. The complainant claimed title through this mortgage foreclosure. The defendant procured a quitclaim deed of the property, correctly

describing the land, from complainant's original grantor, and sought to set up her title. It appeared in that case, as in this, that the complainant had been put in possession of the land after purchasing the same at foreclosure sale. The court granted a decree quieting complainant's title, holding that the deed procured from complainant's grantor inured to the benefit of complainant. In the present case the complainant was in possession at the time the deed was made to Mrs. Osmun and from her to Boyd, and they cannot be said to have been innocent purchasers.

The decree of the court below must be reversed, and a decree entered here in favor of complainant, as prayed in his bill, with costs of both courts to complainant.

HOOKER, MOORE, and GRANT, JJ., concurred. MONT-GOMERY, C. J., did not sit.